## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| STATE OF MINNESOTA, | Criminal No. 08-136 (JRT) |
| Plaintiff, | |
| v. | **ORDER ON PETITION FOR REMOVAL** |
| MARANDA M. WEBER, | |
| Defendant. | |

Timothy C. Scannell, Cook County Attorney, **OFFICE OF THE COOK COUNTY ATTORNEY**, Cook County Courthouse, 411 West Second Street, Grand Marais, MN 55604, for plaintiff.

Paul W. Rogosheske, **THUET, PUGH, ROGOSHESKE & ATKINS, LTD.**, 222 Grand Avenue West, Suite 100, South St. Paul, MN 55075, for defendant.

Defendant Maranda M. Weber is a federal agent employed by the United States Border Patrol. On October 31, 2007, Weber struck a pedestrian with her vehicle while she was patrolling on the Gunflint Trail in Cook County, Minnesota. The pedestrian, Kenneth Millard Peterson, later died as a result of his injuries. Weber was subsequently indicted by a state grand jury for one count of careless driving, *see* Minn. Stat. § 169.13, subd. 2, and one count of failing to drive with due care. *See id*. § 169.14, subd. 1. (Notice of Removal ¶ 5, Ex. A.) Weber then filed a notice petitioning to remove this action to the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446.

The procedures applicable to removals of state proceedings are set forth in 28 U.S.C. § 1446. After the filing of a timely notice of removal, this Court is to determine "[i]f it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted." § 1446(c)(4). If so, "the court shall make an order for summary remand." § 1446(c)(4). If not, the court is to hold an evidentiary hearing to determine whether there is a sufficient factual basis for removal. § 1446(c)(5); *see also Wyoming v. Livingston*, 443 F.3d 1211, 1225 (10th Cir. 2006) (considering – but ultimately declining to decide – whether it is legal error to remove a case under § 1442(a) without a hearing). This Court issued an Order concluding that summary remand would be inappropriate in this case and that an evidentiary hearing would be necessary to determine whether there is an adequate basis for removal. *Minnesota v. Weber*, No. 08-136, 2008 WL 4572513 (D. Minn. Oct. 14, 2008). That hearing was held on December 9, 2008. On the basis of that hearing and other documents submitted by the parties, the Court now denies Weber's petition for removal and remands this case to state district court.

**BACKGROUND**

Agent Maranda M. Weber is employed as an agent and patrol officer by the United States Department of Homeland Security ("DHS"). (Notice of Removal ¶ 1.) Weber is specifically assigned to the United States Border Patrol, a division of DHS. (*Id.*) Weber's duties include investigating crimes along the border between the United States and Canada in Northern Minnesota. (*Id.*)

On October 31, 2007, Weber was on duty patrolling along the Gunflint Trail, a road passing through Cook County, Minnesota near the Canadian border. At some point between 6:20 p.m. and 7:00 p.m., Weber assisted a Cook County police officer in removing a downed tree from the road. (Supplemental Report by Deputy Collman, Docket No. 14-4 at 2.)

Later in the evening, Dr. Kenneth Millard Peterson and Susan Scherer were traveling north on the Gunflint Trail and also discovered a downed tree. (Report by Deputy Hughes, Docket No. 14-3 at 1.) The tree was at least partially obstructing the southbound lane, and Peterson stopped to try and remove it. (State Patrol Fatality Report, Docket 15, Ex. 1 at 8.) Peterson stopped his vehicle in the northbound lane and angled it slightly toward the southbound lane, in an attempt to illuminate the area of the downed tree while he worked. (*Id*.) Peterson worked with a chainsaw and wore ear protection to limit the impact on his hearing. (Hughes Report at 1.)

Shortly before 9:00 p.m., Weber was driving southbound on the Gunflint Trail, heading toward the area on the road where Peterson was working. (*Id*.; State Patrol Report at 8.) Scherer saw Weber approaching and began yelling at Peterson, but he could not hear her because of his ear protection. (Hughes Report at 1.) Weber's vehicle then struck Peterson in the back of his leg. (State Patrol Report at 8.) The impact knocked Peterson into his own vehicle, and he later died as a result of his injuries. (Hughes Report at 1; State Patrol Report at 8.) Weber told officers on the scene that she had not seen Peterson or the tree, and there was no evidence that she used her brakes before the collision. (Hughes Report at 1.)

A fatality report by a Minnesota State Patrol officer assessed the factors that contributed to the accident. The report concluded that Weber's attention was "less than stellar." (State Patrol Report at 11.) The report suggested that Weber would have seen Peterson's headlights 923 feet before the collision, giving her 12 seconds to react, and would have seen Peterson's hazard lights 315 feet before the collision, giving her 4 seconds to react. (*Id*. at 10-11.) The report suggested that if Weber had deployed her emergency brake within 2 seconds of when she was close enough to see Peterson's hazard lights, she would have stopped approximately 50 feet before reaching Peterson and the tree. (*Id*.) The report also indicated, however, that Peterson's headlights posed a "visual obstruction" as a result of the positioning of his vehicle. (*Id*. at 10.) The likely impact of this "obstruction" is apparent from the following account of the State Patrol's crash reconstruction:

> I [State Patrol Officer Jason Hanson] placed portions of the now cut out tree back onto the roadway to try to replicate the view that Weber had at the time of the crash. Looking toward the scene with both high and low beams of [Peterson's vehicle] on with the tree present I was unable to distinguish the tree obstruction in the southbound lane. Deputy Hughes drove southbound toward the scene at 50 MPH and was unable to see the tree blocking the southbound lane as he was blinded by [Peterson's vehicle's] headlights and the tree was not in the direct line of the headlights. I observed Deputy Hughes stop just prior to the tree in this test; however, he informed me that the reason that he stopped was because he knew that the tree was there and did not want to hit it.

(*Id*. at 8-9.) The report offered no other support for the notion that Weber would have seen Peterson or the tree before the accident, and no other explanation for why Weber should have promptly pulled her emergency brake upon seeing Peterson's hazard lights.

At the December 9, 2008, evidentiary hearing, David Daubert, an accident reconstruction expert, presented his analysis of the accident based on his experience and

- 4 -

his independent review of the evidence. Daubert testified that Weber probably would not have been able to distinguish Peterson's car from a typical on-coming vehicle and that Peterson's headlights likely prevented Weber from seeing Peterson or the tree. Daubert added that the accident occurred in an area of the road that had a double-yellow line – which indicates that visibility may be limited – and that Peterson did not have the types of road markers that would ordinarily be used in a highway work zone. In sum, Daubert testified that even though Weber certainly would have seen Peterson's headlights, it is unlikely that she or anyone else in similar circumstances would have seen Peterson or the tree, or otherwise recognized a reason to stop.

Weber has also submitted various news articles and blog postings from the Cook County area discussing the accident. (*See* Docket Nos. 6, 8, Exs. C-H.) Several of these articles express frustration over Weber's attempts to remove this case to federal court. (*Id.*)[1] In addition, another Border Patrol agent testified at the evidentiary hearing that he had heard several insensitive remarks about the accident from residents of Cook County.

## ANALYSIS

### I. STANDARD FOR REMOVAL

Under 28 U.S.C. § 1442(a), federal officers have a limited right to remove state legal proceedings to federal court. That statute allows the removal of any civil or criminal case against "any officer . . . of the United States or of any agency thereof, sued . . . for any act under color of such office." § 1442(a). The parties agree that Weber

---

[1] Weber filed a motion seeking leave to file these additional materials in support of her removal notice. (Docket No. 3.) That motion is granted.

qualifies as a federal officer for the purposes of § 1442(a)(1).  To qualify for removal, however, Weber must also raise a "colorable federal defense arising out of [her] duty to enforce federal law."  *Mesa v. California*, 489 U.S. 121, 133, 139 (1989) (internal quotation marks omitted).  In other words, it is not enough for a federal employee to simply allege that at the time of the incident she was "on duty and acting in the course and scope of [her] federal employment."  *Mesa*, 489 U.S. at 123 (internal quotation marks omitted); *see also North Carolina v. Ivory*, 906 F.2d 999, 1001 (4th Cir. 1990) (noting that in *Mesa*, the "Supreme Court held . . . that a 'scope of employment' defense was insufficient by itself to support removal").  "For a defense to be considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate."  *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001).

### A.     Colorable Federal Defense

The sole federal defense invoked by Weber is immunity.[2]  "[I]n the context of a criminal prosecution, the immunity defense bars a state from prosecuting a federal agent for alleged violations of a state criminal law if (1) the federal agent was performing an act which [s]he was authorized to do by the law of the United States and (2) in performing

---

[2] In Weber's initial removal notice, filed by an attorney who has since withdrawn from the case, she stated that she would be asserting "a number" of federal defenses.  (Notice of Removal ¶13.)  However, immunity is the only defense that notice addressed at length.  (*Id.* ¶¶15-27.)  Accordingly, the Court stated in its Order setting the evidentiary hearing that if Weber intended to invoke any other federal defenses, she should address them in her brief.  (Docket No. 12 at 3 n.1.)  That brief was filed in advance of the evidentiary hearing and does not expressly address any defenses other than immunity.  (*See* Docket No. 14.)  Thus, immunity is the only defense from Weber's removal notice addressed by the Court.

that authorized act, the federal agent did no more than what was necessary and proper for h[er] to do." *New York v. De Vecchio*, 468 F. Supp. 2d 448, 459 (E.D.N.Y. 2007) (internal quotation marks omitted). In *North Carolina v. Cisneros*, 947 F.2d 1135, 1139 (4th Cir. 1991), the Fourth Circuit explained at length how these standards apply to on-duty traffic accidents involving federal officers. The court stated:

> [T]o establish . . . a federal immunity defense—hence federal removal jurisdiction—growing out of an on-duty vehicular traffic accident, a federal officer must show that the accident resulted from an exigency or emergency related to his federal duties which dictated or constrained the way in which he was required to, or could, carry out those duties. Thus, the necessity to exceed a speed limit in order to capture a fleeing felon, or to execute a raid, or the necessity to use a known defective vehicle to complete emergency snow clearing are examples of facts supporting an immunity defense, hence federal jurisdiction, in this type situation. *But facts which do not reveal any such legitimately constraining duty-related emergency or exigency as the cause of state law violation do not suffice to establish a federal defense, hence a basis for removal jurisdiction.*

*Cisneros*, 947 F.2d at 1139 (citations omitted) (emphasis added). These principles are consistent with the decisions of numerous other federal courts that have denied petitions for removal where officers were involved in traffic accidents while on duty. *See Mesa*, 489 U.S. at 123-39 (denying removal where federal employees were involved in traffic accidents, because the circumstances gave rise to no federal defense); *North Carolina v. Ivory*, 906 F.2d 999, 1001-03 (4th Cir. 1990) (denying removal where an officer's violation of a traffic law was unrelated to the circumstances of his official responsibilities); *Georgia v. Westlake*, 929 F. Supp. 1516, 1521-22 (M.D. Ga. 1996) (denying removal where an officer merely happened to be on duty when he violated a traffic law).

Here, Weber conceded at the evidentiary hearing that there are no facts in the record sufficient to establish an "exigency or emergency" under *Cisneros*. Weber argues, however, that her case is distinguishable from all of the accident cases cited above, because there is "no scientific evidence" that she violated any traffic laws. (Mem. In Supp. of Def.'s Mot. for Removal, Docket No. 14, at 2.) She argues that her innocence – in combination with the fact that she was on duty at the time of the accident – is a sufficient basis for removal. She also argues that she will be prejudiced by unfair hostility toward the federal government if she is tried in Cook County.

The Court agrees with Weber that there appears to be considerably less evidence of a crime in this case than in the other traffic cases cited above. While it is conceivable that the state may have additional evidence that is not yet in the record, the evidence summarized above does not suggest that Weber committed a crime. In addition, the Supreme Court has not expressly foreclosed the possibility that a federal officer's denial of wrongdoing could "adequately replace the specific averment of a federal defense" where "careful pleading[] demonstrate[s] the close connection between the state prosecution and the federal officer's performance of his duty."[3] *Mesa*, 489 U.S. at 132 (noting that it "need not decide" whether removal on those grounds would be permissible

---

[3] Weber argues that her innocence in combination with the fact that she was on duty is a sufficient basis for an *immunity* defense. However, she offers no support in the law – and this Court finds no support – for the notion that an officer can invoke federal immunity against state charges simply by denying them. Indeed, if the Supreme Court thought that this was an appropriate basis for immunity, its discussion of the possible "close connection" exception would have been unnecessary. There would have been no need to "replace" the defendant's colorable federal defense in those cases, because the defendant could have invoked federal immunity. Thus, the Court considers Weber's argument under the possible exception to the federal defense requirement outlined in *Mesa*.

under § 1442(a) or the Constitution); *see also Kolibash v. Comm. on Legal Ethics of W.V. Bar*, 872 F.2d 571, 574-76 (4th Cir. 1989) (applying this exception); *but see Westlake*, 929 F. Supp. at 1521-22 ("[W]ithout the requirement that the defendant present a federal defense, the court has no basis for jurisdiction under Art. III."). The basis for such an exception would be to prevent state officials from interfering with critical functions of the federal government by bringing baseless charges against federal employees. *See Kolibash*, 872 F.2d at 574-76 (allowing removal under this exception where an ethics investigation "went to the heart of a critical federal function – a United States Attorney's supervision of his own staff").

Even if this exception is permissible under both § 1442(a) and the Constitution, however, the Court is not persuaded that this is an appropriate case for removal. While the evidence here is thin, Weber was undisputedly involved in an unusual, fatal accident. In addition, a report on the accident offered at least mild criticism of Weber's attention. Finally, while Weber has alleged general hostility toward the Border Patrol in Cook County, she has not offered any evidence suggesting that this hostility infected the decision-making of the state's prosecutors.[4] In short, though it is not clear that the speculation in the State Patrol fatality report is an adequate foundation for a conviction – particularly in light of the report's near-admission that Weber would not have seen Peterson or the tree – these are not circumstances that suggest a prosecutor simply manufactured charges for the purpose of harassing a federal employee. Nor is there

---

[4] While the Court finds no basis for treating general hostility within the community as a relevant consideration for removal purposes, it would certainly be relevant to whether Cook County is an appropriate venue if this case proceeds to trial.

evidence that this misdemeanor traffic case touches on core responsibilities of the federal government, or critical federal interests. *Cf. Kolibash*, 872 F.2d at 574-76. Thus, while the decision of whether to continue to pursue these charges will clearly be difficult, the Court does not find anything in the record that justifies shifting these proceedings to federal court. Accordingly, Weber's petition to remove this case to federal court is denied, and the case is remanded to the state district court in Cook County.

### ORDER

Based on the foregoing, all the records, files and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Weber's Motion for Leave to File Addendum to Notice of Removal [Docket No. 3] is **GRANTED**.

2. Weber's petition for removal [Docket No. 1] is **DENIED**.

3. This matter is **REMANDED** to the State of Minnesota District Court, Sixth Judicial District, Cook County.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 17, 2008　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　United States District Judge